USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#:
DATE FILED: 3-23-18

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LATASHA MONIQUE FRANKLIN,<br><br>Plaintiff,<br><br>-against-<br><br>CAROLYN COLVIN, *ACTING COMMISSIONER OF SOCIAL SECURITY*,<br><br>Defendant. | 16-cv-06478 (ALC)<br><br><u>OPINION AND ORDER</u> |

**ANDREW L. CARTER, JR., United States District Judge:**

This is an action challenging the Commissioner of Social Security's ("Commissioner") final decision that Plaintiff Latasha Monique Franklin ("Plaintiff") is not entitled to disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act. Currently pending are Plaintiff's and Commissioner's cross motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The Court has considered the parties' submissions and for the reasons set forth below, the Court grants the Commissioner's motion and denies Plaintiff's motion.

## BACKGROUND

**I. Procedural Background**

On January 28, 2014, Plaintiff applied for DIB and SSI. *See* R. at 8.[1] The Social Security Administration ("SSA") denied her claims on May 15, 2014. *Id.* at 59-64. Plaintiff

---

[1] "R" refers to the Certified Administrative Record filed at ECF No. 11. Pagination follows original pagination in the Certified Administrative Record.

1

filed a written request for a hearing before an Administrative Law Judge ("ALJ") on June 23, 2014. *Id.* at 65.

ALJ Kimberly L. Schiro held a hearing on October 14, 2015. *See id.* at 8. Plaintiff did not appear for the hearing. *See id.* Because Plaintiff did not appear, the ALJ issued a Notice to Show Cause. *Id.* at 118. Plaintiff's attorney responded to that notice, but according to the ALJ "did not offer any good cause or explanation for the claimant's failure to appear." *See id.* at 8.

On April 18, 2016 the ALJ denied Plaintiff's claims for the reasons discussed below. *Id.* at 8-15. Plaintiff requested review by the Appeals Council, which affirmed the ALJ's decision on June 20, 2016. *See* ECF 1 ¶ 8. On June 30, 2016, Plaintiff received a letter stating that the ALJ's decision was final, subject to judicial review. *See id.*

Plaintiff filed a complaint in this Court on August 16, 2016. ECF No. 1 ("Compl"). On May 8, 2017, Plaintiff filed a motion for judgment on the pleadings. ECF Nos 14-15. Commissioner filed a cross-motion for judgment on the pleadings on July 6, 2017. ECF Nos. 16-17. Neither party filed a reply brief. Accordingly, this Court considers the matter fully submitted.

## II.   Factual Background

### A. Plaintiff's Background

Plaintiff's disability commenced on January 1, 2013, when she was twenty-eight years old. R. at 14. At the time she filed her disability claim, Plaintiff was living in a homeless shelter with her eight-year-old daughter. *Id.* at 229. However, she since secured her own apartment. *Id.* at 261. Plaintiff has an eighth grade education. *Id.* at 145. She previously worked in the food industry from 2000 to 2001; as a cleaner for one month in 2013; and as a hair dresser from 2006 until 2012. *Id.* at 147. She has not worked since January 1, 2013. *Id.* at 10.

Plaintiff has a history of mental health issues, including both outpatient treatment and psychiatric hospitalizations. *Id.* at 229-30. She has been diagnosed with schizoaffective disorder and bipolar disorder, as well as a substance abuse disorder. *See id.* at 10.

**B. Medical Evidence in the Record**

    **i. Treating Source Medical Evidence**

*Treating Nurse Practitioner Sylvia Cotto*

Sylvia Cotto, a nurse practitioner, treated Plaintiff at the Bronx Lebanon Hospital Adult Outpatient Clinic between December 2013 and October 2015. *See* R. at 214-27; 235-53; 260-72.[2] On January 6, 2014, Cotto conducted an outpatient comprehensive treatment plan. She concluded as follows: Axis I-opioid and alcohol dependence and a mood disorder; Axis II-personality disorder; Axis III-asthma; Axis VI-limited support, housing in a shelter, and lack of income. *Id.* at 226. On March 12, 2014, Cotto completed a Treating Physician's Wellness Plan Report, diagnosing Plaintiff with Bipolar Personality Disorder and "R/O Schizoaffective Disorder." *Id.* at 214-15.

During treatment sessions between 2013 and 2015, Cotto consistently concluded that Plaintiff's "psychiatric symptoms persist and continue to impair [Plaintiff's] functioning in important life areas." *See id.* at 219; 221; 223; 225. Plaintiff's Global Assessment of Functioning ("GAF") was evaluated at 55 on December 11, 2013 (*id.* at 246), and at 60 on January 6, 2014 (*id.* at 226), May 15, 2015 (*id.* at 262), and September 8, 2015 (*id.* at 267).

During at least two sessions in 2014, Plaintiff presented with auditory hallucinations and paranoid delusions. *Id.* at 222 (Feb. 26, 2014); 220-21 (Mar. 12, 2014). However, at other

---

[2] Plaintiff's progress reports were typically signed by Cotto and her treating licensed social worker, Nora Ferraldo. Some reports were only signed by Ferraldo. For ease of comprehensibility, all progress reports are discussed here.

sessions, she presented without any hallucinations or delusions. *See id.* at 224 (Feb. 4, 2014); 217 (Mar. 27, 2014); 265 (Sept. 4, 2015).

On numerous occasions, Plaintiff appeared late or did not show up to her appointments. *See id.* at 222 (Feb. 26, 2014); 262 (May 15, 2015); 268 (Sept. 8, 2015); 267-70 (Oct. 8, 2015). However, a May 15, 2015 report stated that Plaintiff was able to understand the importance of compliance, especially during stressful events; she appeared psychiatrically stable despite being off of her medications for a month; and she had been coping with stressors. *Id.* at 262.

At Plaintiff's last appointment with Cotto on October 23, 2015, Plaintiff said not only that she was taking classes to get her high school diploma and would graduate next month, but also that she was proud of her schoolwork. *Id.* at 271. Plaintiff expressed that she was optimistic about her chances of getting a job and providing a better life for her and her daughter. *Id.* She also said she was less stressed and not overwhelming herself. She was continuing to take her medication and her mood was good. *Id.* Plaintiff appeared psychiatrically stable. *Id.* However, treatment was still recommended because Plaintiff's psychiatric symptoms persisted and continued to impair her functioning in important life areas. *Id.*

*Social Worker Nora Ferraldo*

LMSW Nora Ferraldo treated Plaintiff bi-monthly. *Id.* at 235. At the request of Plaintiff's counsel, on November 12, 2014 Ferraldo completed a "Medical Source Statement About What the Claimant Can Still Do Despite Mental Impairment(s)." *Id.* at 235-39. According to the form, Plaintiff presented with delusional thoughts, paranoia, lability of mood, poor insight, speech impairments, and impaired judgment. *Id.* at 236. Plaintiff had been prescribed Risperdal, Mirtazine, and Depakote. *Id.*

Ferraldo addressed Plaintiff's abilities in numerous areas of daily living. She concluded that Plaintiff had a marked loss in her ability to understand, remember, and carry out detailed instructions; concentrate; maintain a regular schedule; sustain an ordinary routine without special supervision; deal with the stress of semi-skilled and skilled work; make simple work-related decisions; complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the public and get along with others. *Id.* at 237-38. Plaintiff had a moderate loss of her ability to remember locations and work-like procedures; understand and remember very short, simple instructions; carry out very short simple instructions; work in coordination with or proximity to others without being unduly distracted; ask simple questions; adhere to basic standards of cleanliness; respond appropriately to changes in a routine work setting; be aware of normal hazards; travel to unfamiliar places; use public transportation; and set realistic goals or make plans independently. *Id.* She concluded that Plaintiff would be absent from work more than three times a month. *Id.* at 236.

***Rajesh Patel, MD***

Dr. Rajesh Patel treated Plaintiff in the Emergency Room on December 11, 2014. *Id.* at 253-258. Plaintiff was brought to the hospital after she made a "bizarre call" to her therapist that involved threats. *Id.* at 254. At the time, Plaintiff was visibly intoxicated. *Id.* She was evasive, hostile, and had impaired attention, severely impaired judgment, and paranoid delusions. *Id.* at 254-55. Patel determined that her risk level for suicide was low but her risk level for violence was moderate. *Id.* at 255. He diagnosed Plaintiff with bipolar disorder. *Id.*

5

### ii. Consulting Medical Experts

*Arlene Broska, Ph.D.*

On May 6, 2014, Arlene Broska, Ph.D. conducted a psychiatric examination. *Id.* at 229-33. Broska diagnosed Plaintiff with Percocet and OxyContin use disorder, unspecified bipolar disorder, and alcohol, cannabis, cocaine, and heroin use disorders. *Id.* at 232-33.

Her mental status examination revealed that Plaintiff was speaking intelligibly and coherently, her attention and concentration were intact, and she presented with no evidence of hallucinations, delusions or paranoia. *Id.* at 231. Her memory skills were within normal limits and her cognitive function was average. *Id.* However, her insight and judgment were rated as poor. *Id.*

Plaintiff reported doing her own grooming, laundry, and shopping; travelling independently using public transportation; and caring for her eight-year-old daughter. *Id.* at 229-232.

Accordingly, Broska found no evidence of limitations in Plaintiff's ability to perform simple tasks and follow simple directions. *Id.* at 232. However, Plaintiff had mild limitations in maintaining a regular schedule and performing complex tasks consistently; moderate to marked limitations in making appropriate decisions; moderate limitations in relating adequately with others; and moderate to marked limitations in appropriately dealing with stress. *Id.* She concluded that these issues "may significantly interfere with [Plaintiff's] ability to function on a daily basis without ongoing mental health and substance abuse treatment." *Id.*

*State Agency Review Psychologist Dr. Kamin*

On May 13, 2014, Dr. Kamin submitted a Medically Determinable Impairment and Severity Form. He opined that Plaintiff was moderately limited in her ability to: carry out

detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. *Id.* at 52-54. However, she was not significantly limited in her ability to carry out very short and simple instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions and request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or maintain socially appropriate behavior. *Id.* Kamin concluded that Plaintiff could perform semi-skilled work. *Id.* at 54.

***Vocational Expert Robert Meola***

Robert Meola testified as a Vocational Expert ("VE"). The ALJ asked Meola a series of hypothetical questions concerning an individual who: (1) is capable of performing simple routine tasks at all exertional levels, (2) can make simple decisions, (3) can adapt to occasional changes in essential work tasks, (3) is limited to occasional contact with co-workers and minimal contact with supervisors, (4) is precluded from direct contact with the public, (5) is restricted from working on teams or in collaboration with others, and (6) would be off task ten percent of the workday due to lapses in concentration. *Id.* at 30. Meola testified that such an individual could work as a scale operator, sealing machine operator, or labeler. *Id.* at 30-31. According to Meola, the jobs cited were all light, unskilled jobs. *Id.* Further, Meola testified that in the national economy there were 40,000 scale operator jobs, 20,000 sealing machine operator jobs, and 170,000 labeler jobs. *Id.*

## LEGAL STANDARD

I. **Judicial Review of the Commissioner's Determination**

A district court reviews a Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). In other words, this Court must afford the Commissioner's determination considerable deference, and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted).

II. **Commissioner's Determination of Disability**

   A. **Definition of Disability**

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be 'of such severity that

[the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

### B. The Commissioner's five-step analysis of disability claims

The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *see* 20 C.F.R. §§ 404.1520(a)(4) .

This inquiry proceeds as follows. First, the Commissioner determines whether the claimant is employed. *Curry*, 209 F.3d at 122. Second, if the claimant is unemployed, the Commissioner considers whether the claimant has a "severe impairment" that "significantly limits his physical or mental ability to do basic work activities." *Id.* Third, if the claimant suffers from such an impairment, the Commissioner determines whether that impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of the Social Security Act regulations, meaning it conclusively requires a determination of disability. *Id.*; *see also* 20 C.F.R., Part 404, Subpart P, App'x 1. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity ("RFC") to perform her past work. *Curry*, 209 F.3d at 122. Finally, if the claimant is unable to perform his past work, the Commissioner determines whether there is other work which the claimant could perform. *Id.*

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and 'bears the burden of proving his or her case at steps one through four.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). However, at

9

step five, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560).

### i. Special Technique in Mental Health Cases

In addition to this five-step process, when evaluating "the severity of mental impairments," the ALJ must apply a "special technique" during steps two and three. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). This technique "requires the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.'" *Id.* at 265-66. If the claimant "is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s)" in "four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Id.* at 266 (citing 20 C.F.R. § 404.1520a). Paragraph B of each Medical Listing "sets forth the minimum necessary finding for that particular impairment in each of the four § 404.1520a functional areas." *Fait v. Astrue*, No. 10-5407, 2012 WL 2449939, at *5 (E.D.N.Y. June 27, 2012).

Under the regulations, "if the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Kohler*, 546 F.3d at 266. If the mental impairment is determined to be "severe," then the ALJ will "compare the relevant medical findings and the functional limitation ratings to the

criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." *Id.*

"Importantly, the regulations require application of this process to be documented." *Id.* (citing 20 C.F.R. § 404.1520a(e)). The ALJ's written decision must "reflect application of the technique," and it "*must* include a specific finding as to the degree of limitation in each of the functional areas" described above. *Id.*

## THE ALJ'S DECISION

First, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability on January 1, 2013. R. at 10.

Second, the ALJ found that Plaintiff has three severe impairments: schizoaffective disorder, bipolar disorder, and a substance abuse disorder. *Id.* The ALJ determined that these impairments would be considered severe even if Plaintiff did not use drugs or alcohol. *Id.*

Third, the ALJ determined that Plaintiff's impairments, singly and in combination, did not meet or medically equal the severity of Listed Impairments 12.04 or 12.09 in the Social Security Act ("Medical Listings"). *Id.* at 11. The ALJ determined that the "paragraph B" criteria were not satisfied because Plaintiff had only "mild" restriction in daily living; "moderate" difficulty in social functioning and concentration, persistence or pace; and suffered no episodes of decompensation of extended duration. *Id.* Further, there was no indication in the record that Plaintiff fit any of the Paragraph C criteria. *Id.*

Fourth, the ALJ determined that Plaintiff did not have the residual functioning capacity ("RFC") to perform her past work as a hairdresser. *Id.* at 14. The ALJ first determined that Plaintiff has RFC to perform simple, routine tasks at all exertional levels. *Id.* at 12. However, she would be subject to the following limitations: occasional contact with coworkers and

minimal contact with supervisors (10% of the day), but no direct contact with the public; work around others but not in collaboration with them or in teams; make simple decisions and adapt to occasional changes in essential work tasks; and be off 10% of the workday. *Id.* at 12. Since whether Plaintiff's condition prevented her from pursuing her past work was not "dispositive" of her decision, the ALJ proceeded based on a conclusion that Plaintiff could not perform such work. *Id.* at 14.

Finally, the ALJ determined that given Plaintiff's age, education, work experience and RFC, there were significant numbers of jobs in the national economy that Plaintiff could perform. *Id.* at 15. In this determination, the ALJ relied on the testimony of Meola, the VE, that Plaintiff could perform unskilled work requiring no more than light exertion such as working as a scale operator, a sealing machine operator, or a labeler. *Id.*

## DISCUSSION

### I. Application of Special Technique

Although Plaintiff did not raise the ALJ's compliance with the "special technique" for mental impairments, this Court addresses the issue *sua sponte*.

The ALJ did not cite to 20 C.F.R. § 404.1520a or state on the record that she followed the special technique. The Court has examined the record to determine if the ALJ nevertheless made the necessary specific findings at steps two and three.

At step two, the ALJ found that Plaintiff had schizoaffective disorder, bipolar disorder, and a substance disorder and that these impairments "can properly be considered severe." R. at 10. Thus, the ALJ proceeded to step three, where she determined that the impairments did not meet or medically equal the Medical Listings. Although the ALJ did not specifically state that she was following the special technique, she outlined the four functional areas based on the

Paragraph B criteria under Medical Listing 12.04, discussed her review of the psychiatric treatment notes and other evidence in the record, and made specific conclusions with respect to each category. R. at 11; *see Fait*, 2012 WL 2449939, at *5.

The ALJ should have expressly articulated that she was applying the special technique in this case. However, because the ALJ appears to have "evaluated each of the four functional areas" and "record[ed] specific findings as to [Plaintiff's] degree of limitation" in each of these areas, this case need not be remanded. *Cf. Kohler*, 546 F.3d at 267 (remanding where ALJ did not follow special technique or make specific findings on the record); *see Comins v. Astrue*, 374 Fed. App'x 147, 149 (2d Cir. 2010) (affirming where "the ALJ's decision specifically expounded upon each of the four functional areas of the special technique.")

## II. Weight Accorded to Treating Nurse Practitioner and Social Worker

Plaintiff alleges that the ALJ erred by according no weight to the opinion of treating nurse practitioner Cotto and "some weight" to treating social worker Ferraldo.

Under the "treating physician rule," "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). A "treating source" means an "acceptable medical source" that provided "medical treatment or evaluation" and has an "ongoing treatment relationship" with the plaintiff. *Pilaccio v. Comm'r of Social Security Administration*, No. 16-1251, 2017 WL 2789023, at *3 (E.D.N.Y. June 26, 2017) (citing 20

13

C.F.R. § 404.1527(a)(2)). At the time Plaintiff's complaint was filed, social workers and nurse practitioners were not considered "acceptable medical sources" under the regulations. *See id.*[3]

Still, the ALJ "*may* use evidence from 'other sources,'" including nurse practitioners and licensed clinical social workers. SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (emphasis added). Opinions from "other sources" should be evaluated based on "the same factors for the evaluation of the opinions of 'acceptable medical sources.'" *Canales v. Comm'r of Social Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (citing SSR 06-03p at *4). Accordingly, while an ALJ is "free to conclude" that the opinions of social workers or nurse practitioners are "not entitled to any weight," the ALJ must "explain that decision." *Id.*

Here, neither social worker Ferraldo nor nurse practitioner Cotto are considered "acceptable medical sources." Thus, the ALJ was free to afford their opinions no weight so long as she explained her decision. *See Canales*, 698 F. Supp. 2d at 344; *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017).

The ALJ properly justified her decision regarding how to weigh Cotto and Ferraldos' opinions. The ALJ did not completely disregard Cotto's opinion. She only assigned no weight to Cotto's opinion that "the impact of the claimant's psychotic bipolar condition would prevent her from being able to work for 12 months." R. at 13. This is proper as statements about the amount of time a complainant will be able to work are never entitled to controlling weight, regardless of who makes them. 20 C.F.R. §§ 404.1527(d), 416.927(d) (decision as to whether a claimant is "unable to work" is reserved to the Commissioner); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Additionally, the ALJ properly gave "some weight" to Ferraldo's November

---

[3] Recent revisions to the SSA regulations include advanced practice registered nurses as "acceptable medical sources" but only as to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7); *see Pilaccio*, 2017 WL 2789023, at *3. Since Plaintiff's claim was filed before March 27, 2017, this provision does not apply. Regardless, social workers are still not considered "acceptable medical sources." *See* 20 C.F.R. § 404.1502(a).

14

10, 2014 opinion. The ALJ relied on some aspects of the opinion and afforded other parts of the opinion less weight because she found that some of the limitations were "complicated by" Plaintiff's noncompliance with treatment and abuse of Percocet and Oxycontin. *Id.* at 13. The ALJ appropriately discussed that the medical evidence showed that Plaintiff has treated her impairments by taking prescribed medication, visiting medical professionals and therapists, and otherwise following their advice. *Id.*

Accordingly, the ALJ did not err in affording limited evidentiary weight to aspects of Cottos' and Ferraldos' opinions.

### III. Broska's Conclusion Regarding Mild Limitations

Plaintiff contends that the ALJ erred in accepting Broska's opinion that Plaintiff had only mild limitations in maintaining a regular schedule. She asserts that Broska's examination would not have provided her with evidence regarding Plaintiff's ability to maintain a regular schedule, and that the evidence in the record suggests the opposite. Moreover, she notes that Broska's opinion was issued before Plaintiff began missing medical appointments and her social security hearing. The Commissioner contends that Broska's opinion is fully supported by her examination and expertise.

Here, the ALJ did not err in accepting Broska's opinion. "It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions." *Rivera v. Colvin*, No. 15-3587, 2015 WL 9591539, at *16 (S.D.N.Y. Dec. 18, 2015) (collecting cases). Moreover, here Broska did not merely evaluate documents but actually evaluated Plaintiff.

In any event, the ALJ stated she considered all of the evidence, and Broska's opinion is consistent with that evidence. R. at 11-12. Some evidence in the record suggests that Plaintiff

15

had moderate difficulties maintaining a regular schedule, *see, e.g.*, R. at 52-54 (Kamin's conclusion that Plaintiff had moderate difficulties maintaining a regular schedule); *id.* at 268 (noting Plaintiff was noncompliant with appointments), while other evidence shows she was generally able to keep a regular schedule, *see, e.g., id.* at 157 (noting Plaintiff provided daily care for herself and her daughter); 271 (noting Plaintiff was expected to obtain her high school diploma and was looking at job opportunities). Regardless, this Circuit has determined that "moderate" limitations do not preclude an individual's ability to work. *See Mcintyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (no error where ALJ found plaintiff was capable of work despite "moderate difficulties" in social functioning and concentration, persistence or pace).

Accordingly, the ALJ did not err in relying on Broska's opinion.

## IV. Side Effects of Plaintiff's Medication

Plaintiff contends the ALJ erred by failing to consider the side effects of Plaintiff's medications when determining her RFC. Plaintiff was prescribed Risperdal, Mirtazine, and Depakote. *See* R. at 236. Plaintiff notes that these medications can cause drowsiness and oversleeping. Pl Mem at 19. The Commissioner contends that the ALJ did not need to consider the side effects because there is no evidence in the record that Plaintiff actually suffered from them. Def Mem at 27.

The SSA regulations require consideration of the "side effects of any medication the individual takes." SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Evans v. Astrue*, 783 F. Supp. 2d 698, 711 (S.D.N.Y. 2011). The "ALJ, however, need not explicitly discuss a medication or its side effects in his or her decision, so long as the 'decision or record indicate[s] that the ALJ considered the issue.'" *Wilson v. Colvin*, No. 14-5666, 2015 WL 5786451, at *29 (S.D.N.Y. Sept. 29, 2015) (citing *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 282 (N.D.N.Y. 2009); *see also*

16

*Taveras v. Barnhart*, No. 06-977, 2007 WL 1519317, at *3 (E.D.N.Y. May 25, 2007) ("Since the record does not contain any evidence that Taveras suffered adverse side effects from those medications, there was no reason for the ALJ to address side effects in his RFC determination.").

Here, the ALJ noted that Plaintiff indicated she was taking prescribed medications, "none of which she felt at that time had resulted in any side effects." R. at 12. Moreover, none of the voluminous medical records in this case indicate that Plaintiff suffered side effects. *See id.* at 247; 218-21; 224; 226; 241-42; 246; 250; 252; 262; 266; 268; 270; 272 (discussing medication without noting side effects). Accordingly, the ALJ did not err.

## V. Finding of Disability

Finally, Plaintiff contends that the ALJ erred by not finding Plaintiff disabled, despite ample evidence to the contrary.

First, the ALJ did not err in determining that Plaintiff's impairments did not meet or medically equal Medical Listings 12.04 or 12.09. *See* R. at 10-11. Listing 12.04 contains three different sets of possible symptoms, known as paragraphs A, B, and C. An impairment is considered to meet or equal a listed impairment if the claimant either (1) meets the criteria of both paragraph A and B or (2) meets the paragraph C criteria.[4]

The "Paragraph B criteria" require finding either (1) marked restrictions in two of the following: daily living; social functioning; or concentration, persistence, or pace or (2) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.04(B). The "Paragraph C criteria" are met when there is a medically documented history of a chronic affective disorder lasting at least two years which has "caused a more than minimal

---

[4] "Listing 12.09, for substance addiction disorders, is satisfied whenever behavior or physical damage resulting from substance abuse satisfies the requirements of Listings . . . [including] 12.04." *Santiago v. Comm'r of Social Sec.*, No. 13-1464, 2014 WL 4793448, at *11, n.9 (E.D.N.Y. Sept. 25, 2014) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.09).

17

limitation in the ability to perform basic work activities," coupled with one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate"; or (3) one or more years of an "inability to function outside a highly supportive living arrangement." *Id.* § 12.04(C).

The ALJ properly concluded that the record supported mild or moderate difficulties in the areas listed in Paragraph B, and that the record did not support a finding that Plaintiff experienced any episodes of decompensation of an extended duration. *See* R. at 11.[5] While some evidence in the record indicated that Plaintiff suffered "marked" or "moderate to marked" limitations in areas including social interactions, making decisions, and carrying out instructions, *id.* at 232; 236-38, based on consideration of the record as a whole the ALJ's decision was not unreasonable. Further, the ALJ properly concluded that the "Paragraph C criteria" were not satisfied because there was no indication in the record that Plaintiff required a highly supportive living arrangement or would be likely to decompensate if faced with a minimal increase in mental demands or a change in environment. *See id.* As discussed *infra*, the evidence showed that Plaintiff lived on her own and cared for herself and her daughter.

Second, the ALJ did not err in determining that Plaintiff had the RFC to perform full-time work. While the ALJ considered Plaintiff's allegations of her disability, such allegations are "not, alone, conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). If the claimant's reported symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, consideration is also given to such factors as: (1) the claimant's daily

---

[5] Since the ALJ determined that the Paragraph B criteria were not met, she did not need to address Paragraph A.

activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and adverse side-effects of medication that the claimant has taken to alleviate her symptoms, (5) treatment other than medication that the claimant receives or has received for relief of pain or other symptoms, and (6) any other measures that the claimant uses or has used to relieve her pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ properly relied on evidence in the record showing that, despite her mental illness and substance abuse, Plaintiff had an ability to work. The evidence showed that Plaintiff cared for her eight-year-old daughter which required feeding her, clothing her, and taking her to school (R. at 157); prepared meals daily (*id.* at 158); maintained her own apartment (*id.* at 252-53); took public transportation (*id.* at 161); went to church three times a week (*id.*); and was earning her high school diploma (*id.* at 271). Moreover, the ALJ was entitled to afford substantial weight to Broska's opinion that Plaintiff could perform work. *See Mongeur v. Heckler*, 722 F.2d 1039, 1035 (2d Cir. 1983).

Finally, the ALJ properly relied on the VE's assessment to determine that Plaintiff could work as a scale operator, sealing machine operator and labeler and that those jobs existed in significant numbers.

The ALJ complied with the applicable legal standards and reached a decision that was supported by substantial evidence. For the above reasons, Commissioner's motion for judgment on the pleadings is GRANTED and plaintiff's cross-motion is DENIED.

**SO ORDERED.**

Dated: March 23, 2018
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**